## Chesapeake & Ohio Railway Company of Kentucky v. Vaughan's Administratrix.

(Decided June 5, 1914.)

### Appeal from Boyd Circuit Court.

1. Railroads—Structures—Duty of Lessor to Public—Liability for Breach—Section 203, Constitution.—While the lessor of a railroad is not liable to the employes of the lessee for torts of the lessee resulting from the negligent operation and handling of its trains, and the general management of the leased property, it is liable to them for injuries resulting from the negligent omission of a duty owed to the public, such as the proper construction of its road, station houses, etc.

2. Railroads—Negligent Location of Depot Shed—Injury to Employe —Liability.—A railroad is required to place structures used in connection with its road at such distances from the track that they will not endanger its employes in operating trains, and when structures are placed in such proximity to the tracks that they endanger the servants while discharging their duty, the company is liable for injuries that occur without fault on the part of the employe injured.

3. Railroads—Negligent Location of Depot Shed—Dangerous and
    Unnecessary Obstructions—Evidence.—In an action by plaintiff
    to recover for the death of her decedent, a brakeman, caused by
    his being knocked from the freight car on which he was riding
    by the roof of a depot shed, evidence examined, and held that
    the shed in question was both a dangerous and unnecessary ob-
    struction, and that defendant was liable for the death of decedent
    resulting therefrom.
4. Railroads—Negligent Location of Depot Shed—Injury to Brake-
    man—Contributory Negligence—Question for Jury.—Where dece-
    dent, a brakeman, was killed by being knocked by a depot shed
    from the freight car where he was riding in the performance of
    a duty to the company, the question whether or not he used or-
    dinary care for his own safety was for the jury.

WORTHINGTON, COCHRAN & BROWNING for appellant.

J. F. STEWART and S. S. WILLIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

Charles Vaughan, a brakeman in the employ of the
Chesapeake & Ohio Railway Company of Virginia, was
knocked from a passing car by the railroad depot shed at
Mt. Sterling, Kentucky, and killed. His administratrix
brought this action against the Chesapeake & Ohio Rail-
way Company of Kentucky to recover damages for his
death. The action was predicated on the latter's owner-
ship of the depot grounds and the shed in question, and
the negligent maintenance of the shed. From a ver-
dict and judgment in plaintiff's favor for $10,000, the
defendant appeals.

According to stipulations of counsel, defendant, the
Chesapeake & Ohio Railway Company of Kentucky, was
on the day of the accident the owner of the railroad
track, depot, platform and train shed at Mt. Sterling.
The Chesapeake & Ohio Railway Company, a Virginia
corporation, was the lessee of all the railroad property
of the defendant in the State of Kentucky, and by virtue
of the lease operated its trains thereon and used said
property in connection with such operation. The depot,
platform and train shed at Mt. Sterling were erected by
the Chesapeake & Ohio Railway Company of Virginia,
with the consent and permission of the defendant, the
Chesapeake & Ohio Railway Company of Kentucky, and
were completed and put in use prior to the accident.

The accident occurred on August 20, 1910, about 6.35 p. m. Decedent was then 36 years old, and in good health. He was making about $95 a month. According to plaintiff's evidence, decedent was head brakeman on train No. 92. On the arrival of this train at Thompson, the first switch west of Mt. Sterling, he went back to the caboose and got his lantern. After throwing the switch at Thompson, he started towards the engine, where it was customary for him to ride. He did not reach the engine before its arrival at Mt. Sterling, where it was necessary for him to throw the switch. At that time he was on the top of the car. He had to descend to reach the switch. The switch was located at almost the exact spot where he was attempting to descend. Each of these cars was equipped with a ladder at the side near the end, for the use of trainmen in getting on and off the cars. Just as decedent was going down the ladder on the car on which he was riding, he was struck by the protruding umbrella shed, and knocked from the car. He fell under the train, and was so mangled that he died in a few hours. Plaintiff's evidence further shows that the clearance between the shed and the average box car was only 17¼ inches. In case of larger cars, the clearance was much smaller. Practically all the evidence is to the effect that there was not sufficient clearance for the body of a man between the eaves of the shed and a passing box car, and that on this account the shed was a dangerous obstruction.

According to defendant's evidence, there was a clearance of 22 inches in case of small cars, and about 18 inches in case of large cars. The shed in question was of the same general construction as the sheds of other railroad companies in the middle west.

Appellant makes two contentions: (1) As the shed in question was constructed by the lessee, and appellant had surrendered its control over the leased property, appellant cannot be held responsible for the negligent construction or location of the shed, but such negligence, if any, is negligence in the operation and management of the road, for which the lessee alone is liable; (2), appellant is not liable in any event, for there was a failure to show that the location of the shed was both dangerous and unnecessary.

(1). Section 203 of our Constitution is as follows:

"No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise, or any of its privileges."

We have no statute exempting the lessor company from liability. Whatever may be the rule elsewhere, it is well settled in this State and many others that while the lessor of the railroad is not liable to the employes of the lessee for torts of the lessee resulting from the negligent operation and handling of its trains, and the general management of the leased property, it is liable to them for injuries resulting from the negligent omission of a duty owed to the public, such as the proper construction of its road, station house, etc. Swice's Adm'x v. M. & B. S. R. Co., 116 Ky., 253, 75 S. W., 278; I. C. R. Co. v. Sheegog's Adm'r., 126 Ky., 252; Nugent v. Boston, &c., R. Co., 80 Me., 62, 12 Atl., 797, 6 Am. St. R., 151; Lee v. Southern Pacific R. Co., 47 Pac., 932, 116 Cal., 97, 38 L. R. A., 71, 58 Am. St. R., 140. The question here presented is whether or not decedent was injured as a result of the negligent operation and handling of the train, or the negligent management of the leased property, or by failure of the lessor company to perform a duty owing to the public, and therefore to the decedent as one of the public. In the case of I. C. R. Co. v. Sheegog's Admr., *supra,* the lessor company was held liable for a defect in the construction of the track. In the case of Nugent v. Boston, &c., R. Co., *supra,* a brakeman in the employ of the lessee was injured by reason of the defective construction of the station-house of the lessor company. The court said:

"Our opinion, therefore, is that the plaintiff had the lawful right, as brakeman on the train of the Portland and Ogdensburg (lessee company), to pass and repass by the Bethlehem station-house of the defendant, which, therefore, owed a duty to him to construct and maintain its station-house there in such a reasonably safe manner that its awning would not injure him while in the performance of his duty with due care; and that a negligent breach of that duty by the defendant having resulted in a personal injury to the plaintiff without fault on his part, he is entitled to maintain this action therefor."

This rule, we think, is clearly right. No reasonable distinction can be made between the tracks or road-bed and station-houses. The latter are just as essential to the operation of the railroad as the former. In this case decedent's injuries were due to the dangerous proximity of the depot shed to passing trains, and cannot be said to be the result of mere negligence in the operation or management of the road. Nor is the case affected by the fact that the depot shed was constructed by the lessee after the execution of the lease. It was constructed on the property of the defendant with its permission. Suppose, after the lease, the tracks should need repair, and these repairs were negligently made by the lessee company; or suppose new tracks should be negligently constructed. Could it be contended that because the road-bed itself was turned over to the lessee company, the lessor company is absolved from all liability? Clearly not. The primary obligation imposed by law on the lessor company to maintain its road-beds, station-houses, etc., in a reasonably safe condition is a continuing one. It applies not only to the original construction of the road-bed, station-houses, etc., but to their maintenance as well. Being an absolute duty, it cannot be delegated to the lessee company, so as to relieve the lessor from liability. Whether the duty be performed by the lessor or lessee, the effect is precisely the same. Lee v. Southern Pacific R. Co., *supra.*

(2). This court is committed to the doctrine that where it is possible to do so, the railroad company is required to place structures used in connection with its road at such distances from the track that they will not endanger its employes in operating trains, and when structures are placed in such proximity to the tracks that they endanger the servants while discharging their duty, the company is liable for injuries that occur without fault on the part of the employe injured. The rule has been applied to injuries caused by the following obstructions:

A tunnel gauge, L. & N. R. R. Co. v. Roe, 142 Ky., 456, 134 S. W., 437; a signal pole beside the tracks, L. & N. R. R. Co. v. Hahn, 135 Ky., 251, 122 S. W., 142; cross-arm of a telegraph pole, L. & N. R. R. Co. v. Mulfinger, 80 S. W., 499; overhead bridge, C. N. O. & T. P. R. R. Co. v. Sampson's Admr., 97 Ky., 65, 30 S. W., 12; L. & N. R. R. Co. v. Cooley's Admr., 49 S. W. 339; L. & N. R. R. Co.

v. Tucker, 65 S. W., 453; Hughes' Admr. v. L. & N. R.
R. Co., 104 Ky., 774, 48 S. W., 671; Derby's Admr. v.
Ky. Cent. R. Co., 4 S. W., 303; freight car temporarily
left on parallel and adjoining track, Martin v. L. & N.
R. R. Co., 95 Ky., 612, 26 S. W., 801; mail crane, L. &
N. R. R. Co. v. Milliken's Admr., 51 S. W., 796; project-
ing beam, Nance v. Newport News, &c., R. Co., 17 S. W.,
570; portable coal chute, L. & N. R. R. Co. v. Hall, 115
Ky., 56, 74 S. W., 280; trolley pole, Finley v. Louisville
Ry. Co., 103 S. W., 343; L. & N. R. R. Co. v. Hardin's
Admr., 154 Ky., 282. The same rule of liability is ap-
plied by the Federal courts and the courts of other
states. St. Louis, &c., R. Co. v. Connell, 187 Fed., 955;
Railroad Co. v. McDade, 191 U. S., 64, 24 Sup. Ct., 24,
48 L. Ed., 96; West v. C. B. & Q. R. Co., 179 Fed., 801,
103 C. C. A., 293; Railroad Co. v. Nichols, 57 Kas., 474,
46 Pac., 938; Railroad Co. v. Thompson, 210 Ill., 246, 71
N. E., 328. While recognizing the general rule above
announced, defendant contends that it has no application
to the facts of this case. Our attention is called to the
fact that in the case of L. & N. R. R. Co. v. Hahn, *supra,*
there was evidence that the semaphore pole could have
been placed where it would not have been dangerous to
trains, and where it would have been equally serviceable
for the purposes required, while in the case of Nance v.
Newport News &c. R. C., *supra,* the evidence showed that
the projecting beam was not necessary for use in the
operation of the road, and that in certain other cases
it was shown that there was no reasonable necessity
for placing the structure where it would be dangerous
to trainmen. It is therefore insisted that the doctrine
of the cases cited does not apply in the case under con-
sideration, for the reason that plaintiff not only failed
to show that the location of the depot shed was unnec-
essary, but that defendant's proof clearly showed the
necessity for its location at the point where it was built.
There was some evidence to the effect that the shed
was built to protect passengers from the inclement
weather. In order to perform this duty properly, the
shed was built so as to leave the smallest possible dis-
tance between it and the top of passenger coaches.
Though, as thus built, it was to a certain extent danger-
ous to trainmen, it is argued that the construction was
of a character and nature which, under modern railway
conditions, should be treated as necessary, and that no

imputation of negligence can be rested on the fact of its proximity to passing trains. Of course a case might arise where a dangerous obstruction might, from the very necessity of the case, have to be located exactly where it was placed, but no such case is here presented. The protection of passengers from the rain or snow for the space of two or three feet is not such a necessity as will justify a railroad company in building its depot shed so near passing trains as to endanger the lives of those working thereon. It is better that passengers should suffer some momentary discomfiture than that the lives of the trainmen should be sacrificed. Clearly the shed in question was both a dangerous and unnecessary obstruction, within the rule applicable to such cases.

We cannot say that decedent was, as a matter of law, guilty of contributory negligence. He had a right to be on the car. He was in the act of descending for the purpose of performing a duty which he owed to the company. For this purpose he had a right to use the ladder on the side of the car. With his mind intent on his duty, it was for the jury to say whether, under all the facts and circumstances, he failed to use ordinary care for his own safety.

Judgment affirmed.