## Brooks v. Louisville & Nashville Railroad Company.

(Decided March 28, 1930.)

E. C. O'REAR and B. B. GOLDEN for appellant.

BLACK, BLACK & OWENS, JAMES P. HAMILTON and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant was employed as a brakeman by the appellee, and, while so employed, was seriously injured.

He brought this action to recover for his injuries, and at the conclusion of his evidence the trial court peremptorily instructed the jury to return a verdict for the railroad company, and, from the judgment rendered on the verdict so returned, he appeals.

The only question involved on this appeal is the propriety of the peremptory instruction. The petition alleged that the plaintiff, while working on an intrastate freight train, was knocked from the side of the car upon which he was riding by a car standing on an adjacent storage track which had been placed thereon by other agents and servants of appellee not connected with the train upon which appellant was working. It was further alleged that the appellee failed to furnish the appellant a reasonably safe place in which to work, "in that at the place where he was injured, it had constructed and maintained its tracks upon which and over which it operated its trains so close together, as that there was not sufficient space and distance between said tracks for its employees, including this plaintiff, to perform their labor and his labor in said services with reasonable safety, and its agents and servants before the time of his injury had placed a car upon a track parallel to the track upon which the train he was working upon at a point so close to the track upon which he was required to work in connection with this train as to render and make said place unsafe and dangerous to him and other employees in the performance of their services, even if said tracks were not too close together as above stated and whilst he was in the line of his duty and the performance of his labors and in the exercise of ordinary care for his own protection, he was hurled against said stationary car on said parallel track and knocked from one of the moving cars of the train upon which he was working and injured." It was alleged in an amended petition that some attachment to the stationary car was protruding therefrom at the time he was injured, and that he was injured either by being brought in contact with such protruding attachment or with the car itself.

Appellant was a brakeman on a freight train which left Corbin, Ky., about 9 p. m., on February 26, 1922, and the accident occurred near Arkle, a station a few miles south of Corbin. Before the train on which appellant was working reached Arkle, it overtook another freight train going in the same direction. Appellant entered the caboose of the latter train, and rode about a quarter

of a mile to a road crossing, where he dropped off, as he says, for the purpose of giving his train a moving inspection while it passed the point where he stood. His train stopped for a few minutes at Arkle. At this point appellee maintains three tracks known as the north-bound main, the south-bound main and storage track. Appellant's train was on the south-bound main at the time of the accident. His train pulled out, and, after a few cars had passed him, he saw a fellow brakeman on the eighth or ninth car from the engine, which was an empty coal car. Knowing that the brakeman had inspected the train from that point to the caboose, he caught the grab-irons and climbed up the side of the car on which the other brakeman was sitting. His fellow brakeman was sitting astride the side of the car at the point where the grab-irons were located, with one leg dangling over the side. He claims that as he was climbing up the side of the car his hip came in contact with the car on the storage track, and that he was knocked to the ground.

Only four witnesses, including appellant, were introduced. The evidence discloses that the storage track on which the stationary car stood had been in operation for a number of years, and there is no evidence that its location had been changed or that it had been moved nearer to the south-bound main. A derailer was located at the point where the rails of the storage track curved toward the south-bound main. The purpose of this derailer was to prevent cars stored on the side track from rolling onto the main track or on that part of the storage track that would place them in dangerous proximity to the main track. Appellant's witnesses who were at the scene of the accident soon after it occurred testified that the stationary car was clear of the derailer, that is, was south of it, and at a point on the storage track where the rails were parallel to the rails of the south-bound main. The evidence wholly failed to show that there was any attachment protruding from the side of the stationary car with which appellant could have come in contact.

The only question left therefore is: Were the storage and the south-bound main tracks so near as to endanger an employee who was properly riding on the side of a car on the south-bound main while passing a car on the storage track? It was shown that the usual and standard clearance between cars on main and stor-

age tracks is three or four feet. The distance between the stationary car and the car on which appellant was riding is not satisfactorily shown. Plaintiff and two of his witnesses stated that they did not know what the clearance between the cars was, but one witness stated that there was a clearance of three to three and a half feet between the stationary car on the storage track and the car on which appellant was riding. Counsel for appellant insists that this witness meant that the clearance between the car on the stationary track and south-bound main track was only three and a half feet, which would leave the clearance between the stationary car and a car on the south-bound main considerably less, but we do not think the testimony of the witness is susceptible of this construction. The gist of appellant's action was the dangerous proximity of the tracks, and it was incumbent upon him to show that they were dangerously near to each other in order to establish negligence on the part of the railroad company. It is not claimed, nor is there any evidence tending to show, that either the car on which appellant was riding or the car on the storage track was of unusual construction or width. Appellant's evidence was sufficient to make an issue as to whether he was struck by the stationary car, but was not sufficient to show that the car was in dangerous proximity to the south-bound main.

The railroad company is required to use ordinary care to provide a reasonably safe place for its trainmen, and is liable for injuries resulting from its failure to use such care by permitting cars on side tracks so near main tracks that trainmen on the outside of moving cars in performing their duties are struck by the cars on the adjacent track, but before liability will attach it must be shown that the side track was not placed at a proper distance from the main track.

Appellant contends that this case is controlled by the cases of Chesapeake & Ohio Railway Co. v. Vaughan's Adm'r, 159 Ky. 433, 167 S. W. 141, Chesapeake & Ohio Railway Co. v. Shamblen, 166 Ky. 789, 179 S. W. 837, and Louisville & Nashville Railroad Co. v. Earl's Adm'x, 94 Ky. 368, 22 S. W. 607, 15 Ky. Law Rep. 184; but the facts in each of the cases relied on are distinguishable from the facts here. In the Vaughan case the evidence was to the effect that there was not sufficient clearance for the body of a man between the

eaves of the shed and the passing box car, and on this account the shed was a dangerous obstruction. In the Shamblen case a car was left on the switch within a foot of the main track, and in the Earl case a car had been "kicked in" on the side track, but had not been rolled back far enough to allow a man's body to pass between it and the moving cars on the main track. In each of these cases the plaintiff proved that there was a clearance of only a few inches and that the obstruction which caused the injury was in dangerous proximity to the moving car on which he was working. A like state of facts appears in Louisville & Nashville Railroad Company v. Lewis, 211 Ky. 830, 278 S. W. 143, and Martin v. Louisville & Nashville Railroad Company, 95 Ky. 612, 26 S. W. 801, 16 Ky. Law Rep. 150. A case in which the facts are more similar to the facts in the instant case is C. N. O. & T. P. Railway Company v. Heniz, 227 Ky. 816, 14 S. W. (2d) 138, in which a recovery was denied.

The doctrine res ipsa loquitur is invoked, but that doctrine is not applicable to the facts here, since it is never applied in a master and servant case except "where the evidence shows that the accident is necessarily the result of defective conditions, and can be explained upon no other reasonable hypothesis." Louisville & Nashville R. R. Co. v. Campbell's Adm'r, 186 Ky. 628, 217 S. W. 687, 689; Louisville & Nashville R. R. Co. v. Allen's Adm'r, 174 Ky. 736, 192 S. W. 863; Ashland Supply Company v. Webb, 206 Ky. 184, 266 S. W. 1086; Staley v. Wehmeier, 187 Ky. 445, 219 S. W. 408; Louisville & Nashville R. R. Co. v. Mannin, 217 Ky. 460, 289 S. W. 1089; Highsplint Coal Company v. Palmer's Adm'r, 231 Ky. 24, 20 S. W. (2d) 1020; Louisville & Nashville R. R. Co. v. Grant, 223 Ky. 39, 2 S. W. (2d) 1063.

Appellant testified that, while he was climbing up the side of the moving car, his hip brushed against the stationary car, and he was caused to fall. It is just as reasonable to assume that his hip was protruding an unreasonable distance from the moving car and so came in contact with the stationary car as that the stationary was in dangerous proximity to the south-bound main track. The burden was upon the plaintiff not only to prove that the defendant was negligent, but that its negligence was the proximate cause of the accident. He failed to sustain that burden in either respect.

Our conclusion is that the evidence was not sufficient to warrant a submission of the case to the jury, and that the trial court properly sustained appellee's motion for a directed verdict.

The judgment is affirmed.